# In re Hadi ESLAMIZAR, Respondent

File A26 095 657 - Portland, Oregon

*Decided October 19, 2004*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

An alien found guilty of a "violation" under Oregon law in a proceeding conducted pursuant to section 153.076 of the Oregon Revised Statutes does not have a "conviction" for immigration purposes under section 101(a)(48)(A) of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(48)(A) (2000).

FOR RESPONDENT: Brian Patrick Conry, Esquire, Portland, Oregon

BEFORE: Board En Banc: SCIALABBA, Chairman; HOLMES, Acting Vice Chairman; HURWITZ, FILPPU, GRANT, MOSCATO, MILLER, OSUNA, and PAULEY, Board Members. Dissenting Opinion: COLE, Board Member, joined by HESS, Board Member.

PAULEY, Board Member:

In a decision dated October 8, 2003, we sustained an appeal by the Department of Homeland Security ("DHS"),[1] concluding that the respondent was subject to removal from the United States as an alien who, at any time after admission, has been convicted of two or more crimes involving moral turpitude not arising from a single scheme of criminal misconduct. *See* section 237(a)(2)(A)(ii) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(2)(A)(ii) (2000). On October 31, 2003, the respondent filed the present motion to reconsider, contending that our decision was incorrect as a matter of both fact and law. In part because we agree with the respondent that the decision contains a material factual error, the motion to reconsider will be granted. Upon full reconsideration, moreover, we conclude that our prior

---

[1] The appeal was, in fact, filed by the Immigration and Naturalization Service. However, the functions of the Service were subsequently transferred to the Department of Homeland Security pursuant to the Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135. The transfer occurred on March 1, 2003. *See Matter of D-J-*, 23 I&N Dec. 572, 573 n.1 (A.G. 2003).

decision was legally incorrect. Accordingly, our decision will be vacated and the appeal will be dismissed.[2]

## I.  BACKGROUND AND PROCEDURAL HISTORY

The respondent is a native and citizen of Iran who was first admitted to the United States in 1986 as a nonimmigrant and whose status was subsequently adjusted to that of a lawful permanent resident. On July 25, 1996, the respondent was convicted in the Circuit Court of Multnomah County, Oregon, of the offense of theft in the third degree in violation of section 164.043 of the Oregon Revised Statutes, for which he was sentenced to 2 years' probation. The offense of third-degree theft was classified as a Class C misdemeanor, punishable by a maximum term of imprisonment of 30 days and a maximum fine of $1,000. Or. Rev. Stat. §§ 161.615(3), 161.635(1)(c) (1996).

In July 1999 the respondent was charged for a second time with the offense of third-degree theft. Although the offense qualified as a misdemeanor and was initially charged as such, Oregon law allowed the prosecuting attorney to amend the accusatory pleading so as to "treat" the offense as a "Class A violation" rather than as a misdemeanor.[3] Or. Rev. Stat. § 161.566 (1999). Such a prosecutorial election was made in the respondent's case. Thus his trial was conducted in accordance with section 153.076 of the Oregon Revised Statutes, which provides for proceedings that differ from conventional criminal prosecutions in that, among other things, the State need only prove guilt "by a preponderance of the evidence," rather than "beyond a reasonable doubt." On September 13, 1999, at the conclusion of the respondent's trial, the court found him "guilty" of the offense of third-degree theft under section 164.043 of the Oregon Revised Statutes and sentenced him to pay a nominal fine, as well as various special financial assessments.

The present removal proceedings were initiated, charging that the respondent is an alien convicted at any time after admission of two or more crimes involving moral turpitude not arising from a single scheme of criminal misconduct. *See* section 237(a)(2)(A)(ii) of the Act. On the respondent's motion, the Immigration Judge dismissed the charge and terminated the removal proceedings in a decision dated February 7, 2002. In doing so, the Immigration Judge concluded that the September 13, 1999, Oregon judgment issued against the respondent did not qualify as a "conviction" for a "crime" that could give rise to immigration consequences, because the proceedings in which that judgment

---

[2] In the end, we thus find ourselves in agreement with the Immigration Judge, who found that the respondent's 1999 violation adjudication did not meet the definition of a "conviction" and therefore ordered the proceedings terminated.

[3] In such a case the maximum punishment possible for the offense was a $600 fine. Or. Rev. Stat. § 153.018(2)(a) (1999).

was entered did not afford the respondent many of the constitutional safeguards generally required for criminal prosecutions.

The DHS filed a timely appeal from the Immigration Judge's decision, arguing that the respondent's 1999 violation adjudication qualified as a valid criminal conviction for immigration purposes. We sustained the appeal, holding that the Oregon judgment constituted a "conviction" under the plain language of section 101(a)(48)(A) of the Act, 8 U.S.C. § 1101(a)(48)(A) (2000). We also concluded that the respondent's theft offenses, as defined by Oregon law, were crimes involving moral turpitude that provided a proper basis for a charge of removability. Accordingly, we reinstated the removal proceedings and remanded the record to the Immigration Judge for entry of an order of removal and for further proceedings to determine whether the respondent should be granted some form of relief.

In his present motion to reconsider, the respondent contends that our decision was erroneous as a matter of both fact and law. In our prior decision, we cited as valid authority the Oregon Supreme Court's decision in *State v. Thomas*, 806 P.2d 689 (Or. 1991), which held that proof beyond a reasonable doubt was required for conviction of third-degree theft, even if the offense was tried as a violation rather than as a misdemeanor. *See also State v. Rode*, 848 P.2d 1232 (Or. Ct. App. 1993). The respondent's motion persuades us that *State v. Thomas*, *supra*, was cited in error. Specifically, the holding of that decision appears to have been superseded by statute, and there has been no further decision from the Oregon Supreme Court invalidating or otherwise addressing the constitutionality of the subsequent statute. Because of this crucial factual error regarding the requirements of Oregon law, as applicable to the respondent's case, we reconsider our prior decision in full, and as previously indicated, we arrive at a different legal conclusion.

## II. ISSUE

The issue in this case is whether a judgment of guilt entered against the respondent in a proceeding conducted pursuant to section 153.076 of the Oregon Revised Statutes constitutes a "conviction" for immigration purposes.

## III. ANALYSIS

For purposes of the Immigration and Nationality Act, Congress has defined the term "conviction" to mean, in pertinent part, "a formal judgment of guilt of the alien entered by a court." Section 101(a)(48)(A) of the Act. On September 13, 1999, the Circuit Court of Multnomah County, Oregon, issued a formal judgment finding the respondent "guilty" of the offense of third-degree theft. Although a literal reading of the conviction definition persuaded us earlier

that the respondent's offense was a "conviction" for immigration purposes, on reconsideration we do not find the definition to be clear or to dictate such an outcome.

The purported clarity of the statutory language depends on an assumption that by the phrase "judgment of guilt," Congress meant only that the adjudicative finding of a court must carry the label "guilt" or "guilty." We observe initially that the consequences of such a reading render it an unlikely construction. This is so because it would mean that if a State has so denominated, or in the future should so denominate, a *civil* judgment, e.g., one for an intentional tort or for conduct that results in a judgment to pay a civil fine or punitive damages, such a judgment would evidently qualify as a "conviction" for immigration purposes.

Some civil sanctions may be punitive, even to the point of precluding a subsequent criminal prosecution under the Double Jeopardy Clause, though rarely. *See Hudson v. United States*, 522 U.S. 93 (1997). However, in the absence of any persuasive evidence to the contrary, we doubt that Congress had so expansive a reach in mind. Moreover, a far more sensible reading of the statute exists: namely, that by "judgment of guilt" Congress most likely intended to refer to a judgment *in a criminal proceeding*, that is, a trial or other proceeding whose purpose is to determine whether the accused committed a crime and which provides the constitutional safeguards normally attendant upon a criminal adjudication. Such a meaning, which we adopt, is consistent with the ordinary connotation of the term "guilt," especially in the context of a definition of the term "conviction."

We recognize that Oregon law uses the label "criminal" to describe the hybrid "violation" adjudication proceedings. *See* Or. Rev. Stat. §§ 131.005(6), (7) (2003). Such trials are also subject to the criminal procedure laws of Oregon. Or. Rev. Stat. § 153.030(1) (2003). An offender has the right to confront his accusers and have the evidence of witnesses provided orally in open court. Or. Rev. Stat. § 153.080(2) (2003). A defendant also has the right to appeal the judgment of the court. Or. Rev. Stat. § 153.121 (2003).

However, Oregon's offense classification system defines "crimes" and "violations" in mutually exclusive terms, stating that "[a]n offense is either a crime . . . or a violation." Or. Rev. Stat. § 161.505 (2003). Oregon law further provides that "[c]onviction of a violation does not give rise to any disability or legal disadvantage based on conviction of a crime." Or. Rev. Stat. § 153.008(2) (2003). Moreover, pursuant to section 153.076 of the Oregon Revised Statutes, violation proceedings are tried to the court sitting without a jury, the defendant need not be provided counsel at public expense, and the State need only prove the defendant's violation by a preponderance of the evidence. Significantly, the Oregon Court of Appeals in *State v. Rode*, *supra*, at 1235, concluded that the conduct of a defendant whose misdemeanor offense was prosecuted as a violation "was not a crime, and the prosecution of the conduct was not a criminal prosecution."

It is a bedrock principle of the Constitution of the United States that each element of an offense or crime must be proved beyond a reasonable doubt.[4] *E.g.*, *Apprendi v. New Jersey*, 530 U.S. 466 (2000); *In re Winship*, 397 U.S. 358 (1970). It is beyond debate, therefore, that the respondent, who was found "guilty" under the lesser standard of a preponderance of the evidence, was not found guilty of his "violation" in a true criminal proceeding. Accordingly, we conclude that the court's finding of guilt in a violation proceeding under Oregon law does not fall within the meaning of the term "conviction" under section 101(a)(48)(A) of the Act.

Nothing in the legislative history of the "conviction" definition is to the contrary. We have exhaustively explored this history in prior cases. *See Matter of Salazar*, 23 I&N Dec. 223 (BIA 2002); *Matter of Roldan*, 22 I&N Dec. 512 (BIA 1999). It suffices to note here only that there is nothing therein to show that Congress intended anything by the phrase "judgment of guilt" other than the normal and traditional meaning of a judgment entered in a genuine criminal proceeding.[5]

We further note that nothing in our decision should be taken as asserting that a foreign conviction must adhere to all the requirements of the United States Constitution applicable to criminal trials, including that relating to the requisite standard of proof. Rather, we find that Congress intended that the proceeding must, at a minimum, be criminal in nature under the governing laws of the prosecuting jurisdiction, whether that may be in this country or in a foreign one. Thus, our reading of the statutory definition is not at odds with Congress's decision to reference foreign convictions in many immigration statutes.[6]

---

[4] The respondent's "violation" carried a maximum penalty of a fine. As such, if it were to be regarded as a crime, it would fall, for constitutional purposes, into the category of a "petty offense," a species of misdemeanor that is punishable by a maximum of 6 months' imprisonment and a fine of uncertain dimension, but probably not extending beyond $5,000 for individuals. *See* 18 U.S.C. § 19 (2000). The Supreme Court has held that petty offenses do not carry the right to jury trial and, if no imprisonment will or may be imposed, may also dispense with the right to appointed counsel. *E.g.*, *Lewis v. United States*, 518 U.S. 322 (1996); *Scott v. Illinois*, 440 U.S. 367 (1979). But we are unaware of any decision of that Court or any other holding that the standard of proof for conviction of even a petty offense may deviate below the level of "beyond a reasonable doubt."

[5] Rather, the history demonstrates that Congress was concerned mainly, if not exclusively, with clarifying the effect of post-proceeding rehabilitative actions on whether an alien was deemed convicted.

[6] We have found that Congress intended other limitations with respect to the recognition of foreign convictions for immigration purposes, holding, inter alia, that a foreign conviction must be for conduct recognized as criminal by United States standards in order to be deemed a crime under the immigration laws. *See Matter of De La Nues*, 18 I&N Dec. 140 (BIA

(continued...)

We note that our decision in *Matter of C-R-*, 8 I&N Dec. 59 (BIA 1958), held, inter alia, that a police court adjudication of petty theft under a municipal ordinance, on a standard of preponderance of the evidence, constituted a conviction. To the extent that *Matter of C-R-* may be viewed as inconsistent with our decision today, that case is overruled.[7]

## IV. CONCLUSION

For all of the above reasons, we conclude that the respondent's "violation" adjudication was not a "conviction" for immigration purposes. We will therefore grant the respondent's motion to reconsider, vacate our earlier ruling, and dismiss the DHS appeal.

**ORDER:** The motion to reconsider is granted and our October 8, 2003, decision is vacated.

**FURTHER ORDER:** The appeal of the Department of Homeland Security is dismissed.

*DISSENTING OPINION*: Patricia A. Cole, Board Member, in which Frederick D. Hess, Board Member, joined

I respectfully dissent.

In an order dated October 8, 2003, we concluded, in part, that the respondent's 1999 "violation" adjudication under Oregon law involving the offense of third-degree theft qualified as a "conviction" for a crime for immigration purposes. The majority has now reconsidered that decision, finding that our prior order was erroneous because an Oregon violation adjudication, in which the guilt of the accused is determined by a preponderance of the evidence rather than beyond a reasonable doubt, is not a judgment entered in a "genuine criminal proceeding" so as to qualify as a "conviction" for purposes of the

---

[6] (...continued)
1981); *Matter of McNaughton*, 16 I&N Dec. 569 (BIA 1978), *aff'd*, 612 F.2d 457 (9th Cir. 1980).

[7] Significantly, *Matter of C-R-*, *supra*, was decided before the Supreme Court held in *In re Winship*, *supra*, that the "beyond a reasonable doubt" standard for criminal prosecutions enjoyed constitutional stature. It also obviously was decided long before the enactment of the current definition of the term "conviction" in section 101(a)(48)(A) of the Act. Moreover, the Board's brief discussion in that case contained little if any explanation for its conclusion.

immigration laws.[1] *Matter of Eslamizar*, 23 I&N Dec. 684, 688 (BIA 2004). I disagree with the premise of the majority's decision.

As we made clear in our prior decision, the relevant question in this *civil* immigration proceeding is whether the respondent's "violation" adjudication under Oregon law conforms to the definition of a "conviction" supplied by Congress at section 101(a)(48)(A) of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(48)(A) (2000) (stating that "[t]he term 'conviction' means, with respect to an alien, a formal judgment of guilt of the alien entered by a court"). If the respondent has a "conviction" within the meaning of section 101(a)(48)(A), and the conduct that led to that "conviction" is deemed "criminal" by United States standards, the respondent stands "convicted" of a "crime" for immigration purposes, regardless of whether the judgment was entered in a "true" or "genuine" criminal proceeding. Whatever misgivings we may have concerning Congress' choice of language, we cannot amend the statute. The respondent's remedy in that regard lies with the lawmaking authority, not with this Board.

In this instance, a court of law entered a formal judgment of "guilt" against the respondent for the crime of theft and imposed a fine on him. The term "guilt" has been defined as "[t]he fact or state of having committed a wrong, esp[ecially] a crime." Black's Law Dictionary 727 (8th ed. 2004). The respondent has been adjudged by a court to have committed the offense of theft and has been fined as a result. The offense of theft is recognized as a "criminal" offense by United States standards, and a fine is a criminal penalty. Thus, the respondent's judgment of guilt qualifies as a "conviction" under the unambiguous language of section 101(a)(48)(A), and the respondent has adduced no evidence of a "'clearly expressed legislative intention' contrary to [the statutory] language, which would require us to question the strong presumption that Congress expresses its intent through the language it chooses.'" *INS v. Cardoza-Fonseca*, 480 U.S. 421, 432 n.12 (1987) (quoting *United States v. James*, 478 U.S. 597, 606 (1986); *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980)).

As we acknowledged in our prior order, section 101(a)(48)(A) of the Act defines the term "conviction" very broadly; so broadly, in fact, that it may encompass some judgments that would not qualify as criminal convictions under the law of the jurisdiction that entered the judgment. It is by no means clear to me, however, that the present case involves such a judgment.

The majority acknowledges that "Oregon law uses the label 'criminal' to describe the hybrid 'violation' adjudication proceedings." *Matter of Eslamizar*,

---

[1] The respondent correctly notes that the Oregon Supreme Court's decision in *State v. Thomas*, 806 P.2d 689 (Or. 1991), has been superseded by statute. Thus, I accept the respondent's contention that a violation need only be proved by a preponderance of the evidence under Oregon law.

*supra*, at 687. In fact, both the courts and the legislature of Oregon affirmatively characterize a finding of guilt entered in a violation proceeding as a "conviction." *See* Or. Rev. Stat. §§ 153.008(2), 161.685(4) (2003); *Washington County Police Officers' Ass'n v. Washington County*, 45 P.3d 515, 518 n.3 (Or. Ct. App. 2002) ("A person adjudicated guilty of a violation is 'convicted' of that violation in the same sense that a person charged and found guilty of criminal conduct is 'convicted' of a crime, although the former may not carry the same collateral consequences."), *rev'd on other grounds*, 63 P.3d 1167 (Or. 2003). Furthermore, a violation prosecution is subject to the criminal procedure laws of Oregon, Or. Rev. Stat. § 153.030(1) (2003), and is deemed a "criminal action" under Oregon law, Or. Rev. Stat. § 131.005(6) (2003). Therefore, the judicial proceeding in which a defendant is adjudged guilty or innocent of a violation is deemed a "criminal proceeding." Or. Rev. Stat. § 131.005(7).

Likewise, because a "violation" is deemed an "offense" under Oregon law, the acts constituting a violation are deemed "criminal activities." Or. Rev. Stat. § 137.103(1) (2003). Indeed, the Oregon Supreme Court has held that an attorney, convicted of second-degree theft tried as a violation rather than as a misdemeanor under the prosecutorial-election procedure at issue here, could be subjected to disciplinary proceedings as one who had committed a "criminal act" reflecting adversely on his honesty, trustworthiness, or fitness to practice law. *In re Conduct of Kimmell*, 31 P.3d 414 (Or. 2001). Thus, under the circumstances I cannot agree with the majority's conclusion that the respondent's violation proceedings were not "true" or "genuine" criminal proceedings. *Matter of Eslamizar*, *supra*, at 688.

However, even were I to accept the majority's conclusion that the respondent's September 1999 violation conviction was entered in a noncriminal proceeding, I would simply observe that we are not here concerned with the "conventional" or "ordinary" meaning of the term "conviction."

Section 101(a)(48)(A) of the Act places the term "conviction" within quotation marks and follows it with the word "means." This usage, as well as the structure of the Act, reflects that section 101(a)(48)(A) is a definition section, and that the word "conviction" is a statutory term of art. Congress is free to define such terms of art as it sees fit, without regard to customary usage. *See Stenberg v. Carhart*, 530 U.S. 914, 942 (2000) (holding that "[w]hen a statute includes an explicit definition, we must follow that definition, even if it varies from that term's ordinary meaning"); *Fox v. Standard Oil Co. of New Jersey*, 294 U.S. 87, 96 (1935) (Cardozo, J.) (holding that the "definition [of a statutorily defined term] by the average man or even by the ordinary dictionary with its studied enumeration of subtle shades of meaning is not a substitute for the definition set before us by the lawmakers with instructions to apply it to the exclusion of all others"). Indeed, as one federal court of appeals has recognized, by providing a specific statutory definition of "conviction"—a term

that is "commonly used . . . among lawyers and laymen"—Congress "must have intended it to displace any intuitive, popular, or commonsense understanding." *Renteria-Gonzalez v. INS*, 322 F.3d 804, 813 (5th Cir. 2002).

Where Congress has provided a definition of a statutory term, that definition must be applied. In accordance with this principle, I conclude that Congress intended to apply the term "conviction" to the broad range of judgments that fall within the plain language of section 101(a)(48)(A), even if those judgments would not, or could not, be referred to as "convictions" in the parlance of the criminal law. Thus, the majority's discussion regarding the minimal constitutional requirements for criminal convictions is simply misplaced.

I express no opinion as to whether the respondent has been convicted of a crime for criminal law purposes because this Board is not a criminal court. Furthermore, my determination that the respondent has been convicted of a crime within the meaning of the civil immigration laws is not a criminal judgment. Such a decision would simply render the respondent susceptible to possible removal from the United States; it would not expose him to any criminal punishment.

I conclude that our order of October 8, 2003, contained no legal error that would warrant reconsideration. Accordingly, the motion to reconsider should be denied, and I dissent from the majority's decision to the contrary.