# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 17-1902

———————————————

Pablo Alberto Rubio

*Petitioner*

v.

Jefferson B. Sessions, III

*Respondent*

——————————

Petition for Review of an Order of the
Board of Immigration Appeals

——————————

Submitted: February 14, 2018
Filed: May 25, 2018

——————————

Before LOKEN, BENTON, and ERICKSON, Circuit Judges.

——————————

LOKEN, Circuit Judge.

Pablo Rubio, a native and citizen of El Salvador, petitions for review of a Board of Immigration Appeals (BIA) decision denying his application for Temporary

Protected Status (TPS) and ordering his removal.[1]  The BIA determined that Rubio is ineligible for TPS because he has been convicted of two or more misdemeanors. See 8 U.S.C. § 1254a(c)(2)(B)(i).  Rubio argues this eligibility determination was an error of law because his convictions for violating Columbia, Missouri municipal ordinances are not "convictions" under the Immigration and Nationality Act (INA). Though the grant of TPS is discretionary, we have jurisdiction to review the threshold legal issue of statutory eligibility.  See 8 U.S.C. § 1252(a)(2)(D); Mejia Rodriguez v. U.S. Dep't of Homeland Sec., 562 F.3d 1137, 1144-45 (11th Cir. 2009).  We deny the petition for review.

## I.  Background

The TPS program allows nationals of designated foreign states to remain in the United States temporarily if they meet statutory eligibility requirements.  See 8 U.S.C. § 1254a(a)(1).  In 2001, the Immigration and Naturalization Service (INS) designated El Salvador a TPS-qualifying state after earthquakes prevented the country from adequately handling its nationals' return.  See Designation of El Salvador Under [TPS] Program, 66 Fed. Reg. 14,214 (Mar. 9, 2001).  The designation was extended multiple times.  See Extension of the Designation of El Salvador for [TPS], 81 Fed. Reg. 44,645 (Jul. 8, 2016).  Earlier this year, United States Citizenship and Immigration Services (USCIS, the INS successor) terminated El Salvador's designation, effective September 9, 2019.  See Termination of the Designation of El Salvador for [TPS], 83 Fed. Reg. 2654 (Jan. 18, 2018).

Rubio entered the United States in August 1999 without being admitted or paroled and later secured TPS.  He was judged guilty of the municipal ordinance

---

[1]The BIA's order permitted Rubio to voluntarily depart the United States. When he filed this petition for review, the BIA's alternative final order of removal became effective.  See 8 C.F.R. § 1240.26(i).

violations at issue in 2002, for leaving the scene of an accident, and in 2003, for driving with excessive blood alcohol content. See Columbia, Mo., Code §§ 14-91, 14-613. In 2011, he pleaded guilty in a state circuit court to driving with a suspended license, a misdemeanor offense. See Mo. Rev. Stat. § 302.321.

In July 2012, USCIS withdrew Rubio's TPS after he did not adequately respond to the agency's request for additional information about two of his convictions. See 8 U.S.C. § 1254a(c)(3)(C); 8 C.F.R. § 1244.14(a)(3). In early 2014, the Department of Homeland Security (DHS) served a Notice to Appear that commenced removal proceedings and alleged that Rubio was removable as an "alien present in the United States without being admitted or paroled." 8 U.S.C. § 1182(a)(6)(A)(i). Rubio conceded the charge and filed a TPS application in the removal proceeding, which if granted would have avoided removal so long as he remained TPS eligible.

An Immigration Judge (IJ) granted the application in October 2015, interpreting Missouri law as establishing that municipal ordinance violations are civil matters, not misdemeanor convictions under the TPS statute. The government moved for reconsideration. The next day, a different IJ granted the motion and denied Rubio's application in a summary order. Rubio appealed. The BIA affirmed the second IJ's decision, rejecting the first IJ's interpretation of Missouri law and concluding that Rubio's two municipal ordinance violations were TPS-disqualifying misdemeanor convictions. The BIA did not address the impact of Rubio's 2011 "conviction" for violating Mo. Rev. Stat. § 302.321 because the two misdemeanor municipal convictions rendered him TPS ineligible. As we affirm the BIA's decision, we likewise need not consider the 2011 conviction.

## II. Discussion

Rubio bears the burden in removal proceedings to prove that he is eligible for TPS. See 8 U.S.C. § 1229a(c)(4)(A); 8 C.F.R. § 1240.8(d). As relevant here, the TPS statute provides that "[a]n alien shall not be eligible for temporary protected status under this section if the Attorney General finds that—(i) the alien has been convicted of any felony or 2 or more misdemeanors committed in the United States." 8 U.S.C. § 1254a(c)(2)(B)(i); see 8 C.F.R. § 1244.4(a). The statute does not define "misdemeanor," but the term is defined in the Attorney General's TPS regulations:

> *Misdemeanor* means a crime committed in the United States, either:
>
> (1) Punishable by imprisonment for a term of one year or less, regardless of the term such alien actually served, if any, or
>
> (2) A crime treated as a misdemeanor under the term "felony" of this section.
>
> For purposes of this definition, any crime punishable by imprisonment for a maximum term of five days or less shall not be considered a felony or misdemeanor.

8 C.F.R. § 1244.1. In responding to public comments, the INS explained: "The definitions cited in this rule are identical to those used in other parts of Service regulations and have not been the source of confusion." [TPS] Final Rule, 56 Fed. Reg. 23,491 (May 22, 1991). We find it significant that the exclusion for crimes punishable by imprisonment for five days or less corresponds to offenses classified in Title 18 of the United States Code as an "infraction" rather than a "misdemeanor." See 18 U.S.C. § 3559(a)(6)-(9).

The INA defines "conviction" in 8 U.S.C. § 1101(a), which contains many definitions that apply across the INA, not just to the TPS statute:

-4-

(48)(A) The term "conviction" means, with respect to an alien, a formal judgment of guilt of the alien entered by a court or, if adjudication of guilt has been withheld, where—

(i) a judge or jury has found the alien guilty or the alien has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilt, and

(ii) the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed.

8 U.S.C. § 1101(a)(48)(A). Congress added this definition in 1996 to broaden the BIA's prior definition of conviction and to clarify that a "formal judgment of guilt" is a conviction for INA purposes even if adjudication of guilt is deferred or imposition of a sentence is suspended. See Mejia Rodriguez v. U.S. Dep't of Homeland Sec., 629 F.3d 1223, 1226-27 (11th Cir. 2011).

In Matter of Eslamizar, 23 I. & N. Dec. 684, 687 (BIA 2004), the BIA interpreted "judgment of guilt" to mean "a judgment *in a criminal proceeding*, that is, a trial or other proceeding whose purpose is to determine whether the accused committed a crime and which provides the constitutional safeguards normally attendant upon a criminal adjudication." The BIA held that a judgment of guilt for a third-degree theft "violation" was not a conviction because the prosecution did not need to prove the defendant's guilt beyond a reasonable doubt. Id. at 685, 688.

In Matter of Cuellar-Gomez, 25 I. & N. Dec. 850, 852-53 (BIA 2012), the BIA held that a Kansas municipal judgment for marijuana possession was a conviction because it was "criminal in nature under the governing laws of the prosecuting jurisdiction" (quotation omitted). The BIA observed that the municipal court judge was authorized to impose criminal penalties, including fines and imprisonment, the prosecution was required to prove guilt beyond a reasonable doubt, and convictions could be used to assess the defendant's criminal history. Id. at 853. In a subsequent case, Dominguez-Herrera v. Sessions, 850 F.3d 411 (8th Cir. 2017), the issue was

-5-

whether the BIA properly determined that Kansas municipal theft convictions were "convictions" for crimes involving moral turpitude that made petitioners ineligible for cancellation of removal under 8 U.S.C. § 1229b(b). We upheld the BIA's conclusion that the municipal judgments were "convictions" under 8 U.S.C. § 1101(a)(48)(A), rejecting petitioners' contentions that the BIA had inadequately interpreted Kansas law in Cuellar-Gomez. Id. at 415-18.

This case involves Missouri municipal ordinance violations. The agency precedents are more diverse because, in Matter of Bajric, 2010 WL 5173974, at *2 (BIA Nov. 30, 2010), a single-member decision, the BIA held that Missouri municipal ordinance violations are not "convictions" under the INA because they lack double jeopardy preclusive effect[2] and are not admissible for impeachment purposes. In this case, quoting Tupper v. City of St. Louis, 468 S.W.3d 360, 371-72 (Mo. banc 2015), the BIA panel explained that "prosecutions for municipal ordinance violations [are] 'civil proceedings with quasicriminal aspects'" in which the municipal prosecutor must prove guilt beyond a reasonable doubt. "[O]rdinance violations expose defendants to the possibility of incarceration," the BIA noted, and "are statutorily defined as 'crimes.'" The BIA also identified a number of procedural protections made applicable to municipal ordinance prosecutions by Supreme Court of Missouri Rule 37. Ultimately, the BIA concluded, "whether a 'judgment of guilt' qualifies as a 'criminal' judgment for immigration purposes is a matter of substance, not of form." Based on its review of Missouri law, the BIA disagreed with and declined to follow Bajric.

On appeal, Rubio argues that Missouri courts consider municipal ordinance violations to be civil, not criminal; that municipal proceedings lack important constitutional protections; and that the BIA's contrary conclusion is entitled to no

_____

[2]This conclusion was simply wrong. See, e.g., State v. Rotter, 958 S.W.2d 59, 63 (Mo. App. 1997).

deference because its decisions in <u>Eslamizar</u>, <u>Cuellar-Gomez</u>, <u>Bajric</u>, and this case are inconsistent. The decisions in these factually distinguishable cases need to be reconciled, as the BIA has attempted to do. But we do not find the level of "inconsistency" noted in <u>Castillo v. Attorney General United States</u>, 729 F.3d 296, 302-11 (3d Cir. 2013), and we decline to follow that decision.[3]

In applying the definition of "conviction" in § 1101(a)(48)(A) to the issue of TPS eligibility, the meaning of key words in the applicable immigration statutes and regulations -- conviction, judgment of guilt, misdemeanor, and crime -- is an issue of federal law. <u>See</u> <u>Dickerson v. New Banner Inst., Inc.</u>, 460 U.S. 103, 111-12 (1983); <u>Mejia Rodriguez</u>, 629 F.3d at 1228; <u>United States v. Franklin</u>, 250 F.3d 653, 665 (8th Cir.), <u>cert. denied</u>, 534 U.S. 1009 (2001). Reference to state law is unavoidable, but it would be wrong to "render the law of alien removal . . . dependent on varying state criminal classifications [because] Congress has . . . pegged the immigration statutes to the classifications Congress itself chose." <u>Lopez v. Gonzales</u>, 549 U.S. 47, 58 (2006). As the BIA observed some years before the enactment of § 1101(a)(48)(A), "[w]e find no rational or legal reason for according . . . two aliens different immigration status based on the criminal procedures of the states where they committed a crime." <u>Matter of Ozkok</u>, 19 I. & N. Dec 546, 551 (BIA 1988).

An alien is ineligible for TPS if he "has been convicted of any felony or 2 or more misdemeanors committed in the United States." 8 U.S.C. § 1254a(c)(2)(B)(i). Misdemeanor is defined as a *crime* punishable by the term of imprisonment prescribed in 8 C.F.R. § 1244.1. To render the alien ineligible, his two prior convictions must be for crimes punishable by more than five days imprisonment, and their adjudication must qualify as "convictions" under § 1101(a)(48)(A), defined as

---

[3]Recent unpublished BIA decisions have also declined to follow <u>Bajric</u> and concluded that Missouri "municipal ordinance prosecutions, as a whole, carry the procedural safeguards discussed by the Board in <u>Eslamizar</u>." <u>Matter of H-H-H-B-</u>, 2017 WL 6492053 at *3 (BIA Nov. 20, 2017).

"a formal judgment of guilt of the alien entered by a court." It is significant, but not dispositive, that state law classifies the offenses as "crimes." The substantive federal issue is not classification under state law, but whether a judgment of guilt was entered by a court at the end of a criminal proceeding. It is *irrelevant* whether state law classifies the crimes as "infractions" or "violations," rather than "misdemeanors," so long as the punishment that may be imposed under state law meets the federal definition of misdemeanor in 8 C.F.R. § 1244.1.[4]

For these reasons, we conclude the BIA properly considered this federal law issue to be "a matter of substance, not of form." In determining whether a state law adjudication resulted in a judgment that the alien was guilty of a crime, the most fundamental aspect of a "criminal proceeding" in this country is whether "guilt" was proved beyond a reasonable doubt. If that standard was met, and if the alien was judged guilty of two misdemeanors *as defined in the TPS regulation*, then the alien is ineligible for TPS, whether or not the "judgment of guilt" came at the end of proceedings that state law classified as civil, quasi-criminal, or criminal. Accord Batrez Gradiz v. Gonzales, 490 F.3d 1206, 1208 (10th Cir. 2007) ("Eslamizar does nothing more than reaffirm our traditional standard that findings of guilt must be beyond a reasonable doubt").

Rubio's appeal focuses on additional procedural issues, including one relied on by the BIA in Bajric, whether a municipal ordinance conviction may subsequently be used to impeach. Rubio also notes that municipal judges in Missouri lack jurisdiction over some state criminal offenses, see Mo. Rev. Stat. § 479.170; that no

---

[4]Rubio does not dispute that his municipal ordinance violations were misdemeanors; he argues only that they were not "convictions" under 8 U.S.C. § 1101(a)(48)(A).

plea colloquy is required in Missouri municipal courts;[5] that municipal ordinance violations are subject to the civil statute of limitations; that the rules of evidence do not apply in municipal proceedings; that an information charging a municipal violation need not be reviewed as strictly as a criminal indictment; and that municipal proceedings do not protect a criminal defendant's rights to be tried by a jury and appeal a guilty verdict. The government argues we lack jurisdiction to consider many of these arguments because they were not raised to the BIA. See 8 U.S.C. § 1252(d)(1); Martinez Carcamo v. Holder, 713 F.3d 916, 925 (8th Cir. 2013). But in any event, procedural variations in municipal court proceedings across the country do not affect TPS eligibility. To ensure uniform administration of this national immigration program, the question of substance, not form, is whether the municipal proceeding resulted in a judgment of guilt by a court that the alien committed a crime falling within the definition of "misdemeanor" in the TPS statute and regulation.

Applying these standards, we agree with the BIA that Rubio's two convictions for municipal ordinance violations were "convictions" under § 1101(a)(48)(A). As the BIA more than adequately justified this ruling, it is an agency decision entitled to deference. Dominguez-Herrera, 850 F.3d at 415.

Rubio further argues the second IJ violated his right to due process by not providing sufficient time to respond to the government's motion for reconsideration and not stating reasons for denying his TPS application. To succeed on a due process claim, Rubio must show fundamental procedural error and prejudice. Ismail v. Ashcroft, 396 F.3d 970, 974 (8th Cir. 2005). Rubio does not argue prejudice -- that the outcome of the proceedings may well have been different. The dispositive issue was a question of law that was thoroughly briefed on appeal and reviewed by the BIA

---

[5]Supreme Court of Missouri Rule 37.57 governing municipal court proceedings provides: "No defendant shall either be tried or permitted to enter a plea of guilty unless the defendant is personally present or the judge, defendant, and prosecutor consent to such trial or plea in the defendant's absence."

*de novo*.  We have reviewed and upheld the lengthy decision of the BIA; we do not review the summary ruling of the second IJ.  Rubio suffered no due process prejudice.

The petition for review is denied.

———————————————