# Matter of Kwok S. WONG, Respondent

*Decided March 30, 2022*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

A finding of guilt in a proceeding that affords defendants all of the constitutional rights of criminal procedure that are applicable without limitation and that are incorporated against the States under the Fourteenth Amendment is a "conviction" for immigration purposes under section 101(a)(48)(A) of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(48)(A) (2018). *Matter of Eslamizar*, 23 I&N Dec. 684 (BIA 2004), clarified.

FOR THE RESPONDENT: Margaret W. Wong, Esquire, Cleveland, Ohio

FOR THE DEPARTMENT OF HOMELAND SECURITY: Michael S. Lonoff, Assistant Chief Counsel

BEFORE: Board Panel: HUNSUCKER and PETTY, Appellate Immigration Judges; BROWN, Temporary Appellate Immigration Judge.

PETTY, Appellate Immigration Judge:

The United States Court of Appeals for the Second Circuit remanded this case to us to explain the circumstances under which a proceeding not denominated as "criminal" under the laws of the jurisdiction where it occurred can nonetheless result in a "conviction" within the meaning of section 101(a)(48)(A) of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(48)(A) (2018). As we previously held in *Matter of Eslamizar*, 23 I&N Dec. 684 (BIA 2004), and *Matter of Cuellar*, 25 I&N Dec. 850 (BIA 2012), the distinction between criminal and noncriminal proceedings turns on the rights provided to the defendant. If a proceeding does not afford defendants all of the constitutionally required rights of criminal procedure, it cannot produce a conviction for immigration purposes. If the proceeding does afford defendants those rights, then a judgment of guilt in that proceeding constitutes a conviction under the Act.

## I. BACKGROUND

The respondent is a native of Hong Kong and a citizen of the People's Republic of China. He was admitted to the United States on or about April 19, 1979, as a lawful permanent resident. In 2005, the respondent pleaded guilty to the disorderly persons offense of theft by deception, in

violation of section 2C:20-4(a) of the New Jersey Statutes. In 2006, he was convicted of forgery in the second degree, in violation of section 170.10 of the New York Penal Law.[1] Based on these convictions, the Department of Homeland Security charged the respondent with removability under section 237(a)(2)(A)(ii) of the Act, 8 U.S.C. § 1227(a)(2)(A)(ii) (2006), as a noncitizen who has been convicted of two or more crimes involving moral turpitude not arising out of a single scheme of criminal misconduct.

In February 2012, the Immigration Judge found the respondent removable as charged. The respondent appealed, and we affirmed the Immigration Judge's determination. The respondent filed a petition for review with the Second Circuit, which remanded the case for us to further consider the respondent's removability. We subsequently remanded the record to the Immigration Judge for further proceedings.

In April 2015, the Immigration Judge again found the respondent removable as charged under section 237(a)(2)(A)(ii) of the Act because his two convictions were categorically crimes involving moral turpitude. The respondent filed a second appeal, which we dismissed in March 2018, again holding that both his 2005 and 2006 convictions categorically involved moral turpitude, and that the respondent's 2005 disorderly persons offense was a "conviction" under section 101(a)(48)(A) of the Act. The respondent again petitioned for review.

The Second Circuit granted the petition for review and remanded proceedings a second time, in part, because the court was uncertain whether and why a New Jersey disorderly persons offense satisfied the definition of "conviction" under section 101(a)(48)(A) of the Act. *Kwok Sum Wong v. Barr*, 818 F. App'x 44, 47–48 (2d Cir. 2020). The Second Circuit requested that we explain "the factors necessary to [our] determination of what constitutes a 'conviction'" for immigration purposes and "how an offense that is not a crime under the laws of the jurisdiction where it was committed can become a 'crime' for purposes of the [Act]." *Id.*; *see also INS v. Orlando Ventura*, 537 U.S. 12, 16 (2002) ("Generally speaking, a court of appeals should remand a case to an agency for decision of a matter that statutes place primarily in agency hands.").

The respondent argues that he is not removable as charged because a disorderly persons offense does not constitute a "conviction" under section 101(a)(48)(A) of the Act.[2] He notes that a disorderly persons offense in New

---

[1] The respondent also has a 1988 conviction for conspiracy to import heroin. *See* 21 U.S.C. § 963 (1988). In 1989, an Immigration Judge granted the respondent a waiver of inadmissibility under former section 212(c) of the Act, 8 U.S.C. § 1182(c) (1988), for this offense.

[2] Although the respondent originally sought relief from removal in the form of adjustment of status, he concedes that he is not presently eligible for such relief. Because there is no relief currently available to the respondent, we consider only his removability.

Jersey does not carry a right to an indictment by a grand jury or the right to a jury trial, and that this class of offenses does not give rise to any legal disability or legal disadvantage, as a conviction for a "crime" under New Jersey law does. He also emphasizes that "[d]isorderly persons offenses . . . are petty offenses and are not crimes within the meaning of the [New Jersey] Constitution." N.J. Stat. Ann. § 2C:1-4(b) (West 2005).

## II. DISCUSSION

We again conclude that the respondent's disorderly persons offense under section 2C:20-4(a) of the New Jersey Statutes constitutes a "conviction" within the meaning of section 101(a)(48)(A) of the Act. *See* 8 C.F.R. § 1003.1(d)(3)(ii) (2021). The term "conviction" is defined, in pertinent part, as a "formal judgment of guilt . . . entered by a court." Section 101(a)(48)(A) of the Act. For purposes of this definition, the phrase "judgment of guilt" refers to "a judgment *in a criminal proceeding*, that is, a trial or other proceeding whose purpose is to determine whether the accused committed a crime and which provides the constitutional safeguards normally attendant upon a criminal adjudication." *Matter of Eslamizar*, 23 I&N Dec. at 687; *see also Puello v. Bureau of Citizenship & Immigr. Servs.*, 511 F.3d 324, 329–30 (2d Cir. 2007) (distinguishing a formal judgment of guilt from a deferred adjudication). The respondent does not dispute that he was found guilty, nor does he dispute that the New Jersey Superior Court is a "court" within the meaning of section 101(a)(48)(A). The sole question before us is how we differentiate "criminal adjudication[s]" under *Matter of Eslamizar*, 23 I&N Dec. at 687, from lesser, noncriminal proceedings. *See Kwok Sum Wong*, 818 F. App'x at 47; *see also Castillo v. Att'y Gen. U.S.*, 729 F.3d 296, 311 (3d Cir. 2013) (remanding for the Board to reconsider whether a noncitizen has been convicted of a crime based on a disorderly persons shoplifting offense). As we explained in *Matter of Eslamizar*, we look to the constitutional safeguards.

### A. Board Precedent

In *Matter of Eslamizar*, we held that a "violation" under Oregon law was not a conviction for immigration purposes. 23 I&N Dec. at 687–88. While we made several observations concerning the legal consequences of a violation under State law, our holding in that case rested on the principle that proof beyond a reasonable doubt is a constitutional requirement for a criminal conviction. *See id.*; *see also Apprendi v. New Jersey*, 530 U.S. 466, 477–80 (2000); *In re Winship*, 397 U.S. 358, 361–64 (1970). Because the respondent in that case was found guilty "under the lesser standard of a preponderance of the evidence," we concluded that his Oregon violation

could not be a "conviction" under section 101(a)(48)(A). *Matter of Eslamizar*, 23 I&N Dec. at 688. We did not further elaborate on any implications of our observations regarding the Oregon statutory scheme, as it was unnecessary to our analysis; the application of the preponderance standard was dispositive.

We next addressed what constitutes a "conviction" in *Matter of Rivera-Valencia*, 24 I&N Dec. 484 (BIA 2008). There, we considered whether the conviction of a soldier entered by a general court-martial constituted a "conviction" for purposes of section 101(a)(48)(A). But rather than focusing on what types of proceedings can result in convictions, that case centered on whether a general court-martial qualified as a court. "There [was] no dispute that a general court-martial is a 'criminal' proceeding under the governing laws of the United States Armed Forces, and the respondent's general court-martial [in that case] unquestionably resulted in the entry of a formal judgment of his 'guilt' beyond a reasonable doubt." *Id.* at 487 (citation omitted).

Finally, in *Matter of Cuellar*, 25 I&N Dec. at 855, we held that a Kansas municipal court conviction was a "conviction" within the meaning of the Act. As here, the respondent in that case did not contest that a formal judgment of guilt had been entered against him or that it had been entered by a court. Additionally, we noted that Kansas municipal convictions must be proven beyond a reasonable doubt. The respondent, however, claimed that he was not afforded all of the constitutional rights to which criminal defendants are entitled, and as a result, the conviction was not entered in a genuine criminal proceeding.

We began our analysis with the principle that "a formal judgment of guilt entered by a court qualifies as a conviction under section 101(a)(48)(A) so long as it was entered in a 'genuine criminal proceeding,' that is, a proceeding that was 'criminal in nature under the governing laws of the prosecuting jurisdiction.'" *Id.* at 852 (quoting *Matter of Rivera-Valencia*, 24 I&N Dec. at 486–87); *accord Matter of Eslamizar*, 23 I&N Dec. at 688. Addressing the respondent's constitutional arguments, we held that the absence of a right to a jury trial in Kansas municipal court proceedings did not violate the constitutional right to a jury trial because a defendant had a right to a de novo jury trial on appeal. *See Matter of Cuellar*, 25 I&N Dec. at 854; *see also Ludwig v. Massachusetts*, 427 U.S. 618, 625–28 (1976) (affirming the constitutionality of a two-tier system where, after a conviction is entered in a bench trial, a de novo jury trial is available as of right); *cf. Lewis v. United States*, 518 U.S. 322, 325–26 (1996) (holding that there is no constitutional right to a jury trial for petty offenses). We also rejected the respondent's argument that the Kansas municipal proceedings were not criminal proceedings because they did not afford him an absolute right to be represented by counsel. *Matter of Cuellar*, 25 I&N Dec. at 853–54.

Specifically, we noted that there is no constitutional right to appointed counsel, even for indigent defendants, if no imprisonment may be imposed. *Id.* at 854; *see also Alabama v. Shelton*, 535 U.S. 654, 661 (2002); *Scott v. Illinois*, 440 U.S. 367, 373–74 (1979); *cf. Argersinger v. Hamlin*, 407 U.S. 25, 37–40 (1972) (affirming the right to counsel if there is a potential for loss of liberty). In light of the clear authority on these constitutional questions, we were able to dismiss the respondent's specific challenges to his removability without articulating a comprehensive overview of what constitutes a genuine criminal proceeding.

## B. Judicial Precedent

Courts have taken divergent approaches to *Matter of Eslamizar* and its progeny. As noted above, the Second Circuit has requested we clarify that decision, and the Third Circuit has done likewise. The Eighth and Tenth Circuits, in contrast, have focused on the constitutional aspects of criminal procedure and in particular whether proof beyond a reasonable doubt is required.

Just as in this case, the Third Circuit's decision in *Castillo* considered whether a New Jersey disorderly persons offense constitutes a conviction for a crime under section 237(a)(2)(A)(ii) of the Act. 729 F.3d at 298, 302. The Third Circuit remanded, in part, for us to clarify "what considerations or factors may be relevant in deciding whether a finding of guilt constitutes a conviction under *Eslamizar* and [section 101(a)(48)(A)]." *Id.* at 305. In particular, the Third Circuit instructed the Board to clarify whether proof beyond a reasonable doubt was the dispositive factor and to explain what role the other procedural rights play in the analysis. *Id.* at 307–11.

This case has followed a similar path. The Second Circuit noted that after reviewing our prior decisions, it was left with "uncertainty as to whether and why disorderly persons theft satisfies" section 101(a)(48)(A). *Kwok Sum Wong*, 818 F. App'x at 46. The Second Circuit further noted that although *Matter of Eslamizar* and its progeny identify various factors in determining whether an offense is a conviction for a crime, these cases do not explain whether "any one of these factors was dispositive or to be given lesser weight." *Id.* Accordingly, the Court remanded to afford us "the opportunity to clarify these matters." *Id.* at 48.

The Eighth and Tenth Circuits, however, have read *Matter of Eslamizar* more narrowly, as merely highlighting that proof beyond a reasonable doubt is necessary for a proceeding to be of a criminal nature. *See Rubio v. Sessions*, 891 F.3d 344, 350 (8th Cir. 2018); *Batrez Gradiz v. Gonzales*, 490 F.3d 1206, 1208 (10th Cir. 2007). The Eighth Circuit expressly declined to follow *Castillo*, reasoning that "[i]n determining whether a state law adjudication resulted in a judgment that the alien was guilty of a crime, the

most fundamental aspect of a 'criminal proceeding' in this country is whether 'guilt' was proven beyond a reasonable doubt." *Rubio*, 891 F.3d at 350. Similarly, the Tenth Circuit has explained that *Matter of Eslamizar* "does nothing more than reaffirm our traditional standard that findings of guilt must be beyond a reasonable doubt." *Batrez Gradiz*, 490 F.3d at 1208. In light of the courts' differing interpretations, and in response to the Second and Third Circuit's requests, we now clarify the conditions that make a State proceeding criminal in nature for purposes of section 101(a)(48)(A) of the Act.

## C. Necessary and Sufficient Conditions

We have long held "that whether a conviction exists for purposes of a federal statute is a question of federal law and should not depend on the vagaries of state law." *Matter of Ozkok*, 19 I&N Dec. 546, 551 n.6 (BIA 1988). As the Eighth Circuit noted, "it would be wrong to 'render the law of alien removal . . . dependent on varying state criminal classifications.'" *Rubio*, 891 F.3d at 350 (quoting *Lopez v. Gonzales*, 549 U.S. 47, 58 (2006)). As such, whether and in what contexts a State classifies offenses as "crimes" may assist Immigration Judges in identifying substantive rights and disabilities that flow from that categorization, but the categorization itself is not dispositive. *See Saleh v. Gonzales*, 495 F.3d 17, 23 (2d Cir. 2007) (observing that undue deference to State definitions of convictions "frustrate[s] congressional intent"). To ensure that the definition of a "conviction" turns on Federal law, we must examine the substance of the proceeding, not the label the State assigns to it. *Rubio*, 891 F.3d at 351 (noting the importance "of substance, not form"). As we said before, "Congress intended that the proceeding must, at a minimum, be criminal in nature under the governing laws of the prosecuting jurisdiction, whether that may be in this country or in a foreign one." *Matter of Eslamizar*, 23 I&N Dec. at 688.

In this country, a "genuine" or "true" criminal proceeding must provide certain minimum constitutional protections, without which criminal penalties cannot constitutionally be imposed.[3] *Id.* at 688–89 (discussing required constitutional protections); *cf. Matter of Cuellar*, 25 I&N Dec. at 853–54 (discussing contingent constitutional protections). These minimum protections include: proof beyond a reasonable doubt; and the rights to confront one's accuser, a speedy and public trial, notice of the accusations,

---

[3]  We do not address the requirements for foreign convictions to qualify as convictions under section 101(a)(48).

compulsory process for obtaining witnesses in one's favor, and against being put in jeopardy twice for the same offense.[4]

In short, we determine whether a proceeding is "criminal" by reference to those rights of criminal procedure guaranteed by the Constitution—as incorporated against the States by virtue of the Fourteenth Amendment—and which are applicable without limitation in all criminal prosecutions. *See generally Argersinger*, 407 U.S. at 27–28 (noting the entirety of the Sixth Amendment has been made applicable to the States through the Fourteenth Amendment). Because the rights listed above represent the constitutional floor of criminal procedure, and State law must conform to the Constitution, *see* U.S. Const. art. VI, cl. 2; *Arizona v. United States*, 567 U.S. 387, 399 (2012), each is mandatory in every jurisdiction within the United States. *See Argersinger*, 407 U.S. at 27–28. It follows that the absence of any of them renders the proceeding noncriminal for Federal purposes, and a judgment of guilt in such a proceeding would not be a conviction under section 101(a)(48)(A).

However, not all constitutional rights of criminal procedure are required in every criminal proceeding. Some rights are contingent. *See Matter of Cuellar*, 25 I&N Dec. at 853–54. For example, the right to a jury trial applies only if the charged offense is deemed "serious," and the right to counsel applies only if a conviction can result in loss of liberty. *See, e.g.*, *Lewis*, 518 U.S. at 325 (noting that the right to jury trial applies only to "serious" offenses); *Duncan v. Louisiana*, 391 U.S. 145, 157–59 (1968) (same); *Shelton*, 535 U.S. at 661 (holding that there is no right to counsel if there is no possibility of loss of liberty); *Scott*, 440 U.S. at 373–74 (same). Because contingent rights are not required in every criminal proceeding, their absence cannot be dispositive with respect to whether a particular proceeding is criminal in nature. Similarly, the absence of a right to indictment by grand jury is immaterial, because that right has not been made applicable to the States through the Fourteenth Amendment. *See Albright v. Oliver*, 510 U.S. 266, 272 (1994); *Hurtado v. California*, 110 U.S. 516, 538 (1884).

Focusing on whether the State adjudication is a substantively constitutional criminal proceeding avoids improper reliance on State definitions and categories. *See Matter of Ozkok*, 19 I&N Dec. at 551 n.6. It also avoids the potential for tautological reasoning that a particular proceeding is criminal in nature because it is labeled as such under the laws

---

[4]  *See Apprendi*, 530 U.S. at 490 (discussing proof beyond a reasonable doubt); *In re Winship*, 397 U.S. at 364 (same); *Benton v. Maryland*, 395 U.S. 784, 794 (1969) (addressing double jeopardy); *Washington v. Texas*, 388 U.S. 14, 18–19 (1967) (compulsory process); *Klopfer v. North Carolina*, 386 U.S. 213, 226 (1967) (speedy trial); *Pointer v. Texas*, 380 U.S. 400, 403 (1965) (confrontation); *In re Oliver*, 333 U.S. 257, 265–68, 273–75 (1948) (public trial and notice of accusations).

of the prosecuting jurisdiction, without establishing what conditions make a procedure "criminal" in the first place. *See Castillo*, 729 F.3d at 302 ("[O]ne must still ask 'conviction' of what."); *see also Kwok Sum Wong*, 818 F. App'x at 47–48. Finally, substantive constitutionality will not vary from State to State.

Because the constitutional considerations outlined above are sufficient to establish what is and is not a criminal judgment, we need not consider other aspects of State law. For example, to determine whether a judgment is criminal in nature, we need not consider whether the judgment can be used for impeachment purposes under the State's rules of evidence, whether it constitutes a prior conviction for sentencing purposes under State law, or whether it results in disqualification from State public office or other civil disabilities.

We conclude that the minimum constitutional safeguards for all criminal proceedings define whether a proceeding is criminal in nature, and a jurisdiction's application of these safeguards will render such a judgment a "conviction" under section 101(a)(48)(A) of the Act.[5] Conversely, the absence of any constitutionally required right of criminal procedure renders a proceeding noncriminal in nature and thus not a "conviction" for immigration purposes. *See, e.g.*, *Matter of Eslamizar*, 23 I&N Dec. at 688.

## D. Application to the Respondent

The respondent maintains that his New Jersey disorderly conduct offense was not a conviction within the meaning of the Act because defendants in New Jersey disorderly conduct proceedings are not entitled to an indictment by grand jury or to a jury trial; New Jersey disorderly conduct offenses do not give rise to any legal disability or disadvantage; and disorderly conduct offenses are not "crimes" as defined by State law. We reject the respondent's arguments. How the State defines or labels the offense may be useful but is not dispositive. Instead, the analysis should focus on whether the judgment exposes the accused to criminal penalties and whether the procedure used to arrive at that judgment conforms to the minimum constitutional requirements

---

[5] We recognize that States may provide greater protection than is constitutionally required, *California v. Ramos*, 463 U.S. 992, 1013–14 (1983), to include the provision of some rights traditionally associated with criminal procedure in noncriminal proceedings. However, treating the presence of *all* incorporated, noncontingent constitutional rights in a proceeding as conclusive that it is criminal in nature is a reasonable and administrable interpretation of section 101(a)(48)(A). *See Mayo Found. for Med. Educ. & Rsch. v. United States*, 562 U.S. 44, 59 (2011) (recognizing that an agency's ability to administer a rule is a permissible criterion in interpreting an ambiguous statute); *Matter of Arambula-Bravo*, 28 I&N Dec. 388, 395 (BIA 2021) (citing *City of Portland v. United States*, 969 F.3d 1020, 1038 (9th Cir. 2020) ("Administrability is important")).

for criminal prosecutions.  For the same reasons, whether any legal disability or disadvantage results from a disorderly persons offense is entirely a matter reserved to the States, and the imposition of civil disabilities may vary among States even for similar offenses.  These considerations therefore do not assist us in determining whether the State proceeding results in a "conviction" within the meaning of section 101(a)(48)(A).

The respondent's constitutional arguments must be rejected as well.  As noted above, the right to indictment by grand jury has not been made applicable to the States, so its absence cannot conclusively render a State proceeding noncriminal.  *See Albright*, 510 U.S. at 272; *Hurtado*, 110 U.S. at 538.  Similarly, the right to a jury trial is contingent on the seriousness of the offense.  *Lewis*, 518 U.S. at 325; *Duncan*, 391 U.S. at 157–59.  The penalty for a New Jersey disorderly persons offense is limited to 6 months' imprisonment, *see* N.J. Stat. Ann. § 2C:43-8 (2005), which, for constitutional purposes, is not serious.  *See Lewis*, 518 U.S. at 326 ("An offense carrying a maximum prison term of six months or less is presumed petty, unless the legislature has authorized additional statutory penalties so severe as to indicate the legislature considered the offense serious."); *see also State v. Owens*, 254 A.2d 97, 98–99 (N.J. 1969) (recognizing that trial by jury is not accorded to individuals charged with disorderly persons offenses because such offenses are considered petty offenses under the New Jersey constitution).  Accordingly, the lack of a right to trial by jury for such an offense where there is no Federal constitutional right to trial by jury for offenses carrying the same potential sentence does not resolve whether the proceeding results in a criminal conviction for immigration purposes.

With respect to those constitutional rights that apply without limitation and have been made applicable to the States, all of them apply to New Jersey disorderly persons offenses.  Proof beyond a reasonable doubt is required by statute.  *See* N.J. Stat. Ann. §§ 2C:1-13(a), 2C:1-14(k) (West 2005) (requiring proof beyond a reasonable doubt for all "offenses" and defining "offense" to include disorderly persons offenses).  The remaining rights— confrontation, speedy trial, public trial, notice of accusations, compulsory process, and double jeopardy—are guaranteed by the State constitution.  *See* N.J. Const. art I, paras. 10–11.  These rights are coextensive with the parallel Federal rights.  *See State v. Garron*, 827 A.2d 243, 256 (N.J. 2003) (equating rights under article I, paragraph 10 of the State constitution with the parallel rights under the Sixth Amendment of the United States Constitution); *State v. Kent*, 918 A.2d 626, 647 (N.J. Super. Ct. App. Div. 2007) (Stern, J., concurring) (same); *see also State v. Tropea*, 394 A.2d 355, 357 n.2 (N.J. 1978) (equating double jeopardy under article I, paragraph 11 of the State constitution with the double jeopardy right under the Fifth Amendment).  All of them are afforded to defendants accused of disorderly persons offenses. *See State v. Godshalk*, 885 A.2d 969, 972–73 (N.J. Super. Ct. Law Div. 2005)

("The criminal procedural guarantees of the New Jersey Constitution also extend to non-indictable, quasi-criminal prosecutions. . . . includ[ing] those for disorderly persons offenses . . . ." (citation omitted)); *State v. Ashford*, 864 A.2d 1122, 1127 n.6 (N.J. Super. Ct. App. Div. 2004) ("While the Sixth Amendment applies to 'criminal prosecutions,' we have applied certain provisions or given similar protections to non-indictable prosecutions."). Because New Jersey provides all of the constitutionally-mandated rights of criminal procedure in prosecutions for disorderly persons offenses, convictions for such offenses are "convictions" as defined in section 101(a)(48)(A) of the Act.

## E. Removability

Having determined that the respondent's conviction under section 2C:20-4(a) is a "conviction" for a crime under the Act, we turn to whether the respondent has been convicted of two more crimes involving moral turpitude that render him removable under section 237(a)(2)(A)(ii) of the Act. We again conclude that the respondent's convictions for theft by deception in violation of section 2C:20-4(a) under the New Jersey Statutes and forgery in the second degree in violation of section 170.10 of the New York Penal Law categorically involve moral turpitude.

The respondent argues that a conviction for theft by deception in violation of section 2C:20-4(a) does not require proof of a permanent taking, and the offense cannot involve moral turpitude without an intent to permanently deprive the owner of possession. But the respondent was not merely convicted of a theft offense, but of theft by deception, an element of which is a knowing misrepresentation made with the specific intent to cheat or defraud the victim. *See Selective Ins. Co. v. McAllister*, 742 A.2d 1007, 1011 (N.J. Super. Ct. App. Div. 2000). In determining whether a crime involves moral turpitude, the Second Circuit has held that "[t]he distinction between permanent and temporary takings is not relevant" where the offense involves fraud. *Mendez v. Mukasey*, 547 F.3d 345, 351 (2d Cir. 2008). Because the respondent's conviction involves fraud, we reject his contention that it cannot be for a crime involving moral turpitude because it does not require proof of a permanent taking.

The respondent further asserts that a conviction for forgery in the second degree in violation of section 170.10 of the New York Penal Law is not categorically a crime involving moral turpitude because the statute does not necessarily involve fraud; it may be violated with the intent to injure another in addition to defrauding or deceiving another. We reject this argument as well. Intent to injure is often indicative of moral turpitude. *See Escobar v. Lynch*, 846 F.3d 1019, 1024 (9th Cir. 2017); *Villatoro v. Holder*, 760 F.3d 872, 878 (8th Cir. 2014); *cf. Efstathiadis v. Holder*, 752 F.3d 591, 597 (2d

Cir. 2014) (per curiam) (noting that to qualify as a crime involving moral turpitude, an offense must involve an "evil or malicious intent"). Furthermore, a defendant convicted under section 170.10 must intend to cause injury by falsely making, completing, or altering a written document, which itself involves fraud or deceit. *See Mendez*, 547 F.3d at 347; *see also Rodriguez v. Gonzales*, 451 F.3d 60, 64 (2d Cir. 2006) (per curiam) (holding that an offense that "involves deceit and an intent to impair the efficiency and lawful functioning of the government" necessarily involves moral turpitude). Accordingly, we agree with the Immigration Judge's determination that the respondent is removable as charged under section 237(a)(2)(A)(ii) the Act, as a noncitizen who has been convicted of two or more crimes involving moral turpitude not arising out of a single scheme of criminal misconduct.[6]

## III. CONCLUSION

A finding of guilt in a proceeding that affords defendants all of the constitutional rights of criminal procedure that are applicable without limitation and that have been made applicable to the States through the Fourteenth Amendment is a "conviction" for immigration purposes under section 101(a)(48)(A) of the Act. Because New Jersey law mandates that such rights be afforded to defendants charged with disorderly persons offenses, the respondent's conviction for a disorderly persons offense qualifies as a conviction for immigration purposes. This conviction, along with the respondent's New York conviction for forgery, are crimes involving moral turpitude not arising out of a single scheme of criminal misconduct, rendering him removable as charged. Accordingly, the respondent's appeal will again be dismissed.

**ORDER:** The respondent's appeal is dismissed.

---

[6]  It is undisputed that the respondent's crimes do not arise out of a single scheme of misconduct.