IN THE

# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF NEW JERSEY.

### JUNE TERM, 1891.

---

BERRY v. CHAMBERLAIN.

1. In a suit in the court for the trial of small causes, when under the statute the property levied on is claimed and the title tried, the verdict therein is conclusive for all purposes as between the claimant and the plaintiff in execution.
2. The provision calling for a jury of six men in such case is constitutional.

On case certified from the Union Circuit.

Argued at February Term, 1891, before BEASLEY, CHIEF JUSTICE, and Justices DIXON, MAGIE and GARRISON.

For the plaintiff, *Frank Bergen.*

For the defendant, *Garret Berry.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE. From the statement of the case before us, it appears that the essential facts to which this court is asked to apply the law are these, viz.: The defendant

463

purchased, at a sale made by a constable acting under an execution issued out of the court for the trial of small causes, the chattels enumerated in this writ of replevin.   Previously to that sale and immediately after the levy by the constable, the plaintiff in this case had served upon that officer a written claim to the property seized and now replevied, and had also applied, in due time and form, to a justice for a *venire* to try his right to the goods; the verdict in that procedure being against him, and the property having been sold by the constable, and having been purchased by the defendant, as already stated, the plaintiff, after his defeat as claimant, has now had recourse to the present action.   It is manifest that the sole question to be answered is, whether the verdict just referred to, as between the plaintiff as claimant and the defendant as purchaser by force of the execution, is conclusive, or, on the other hand, is open to contestation.

It is apparent that the subject belongs entirely to the domain of statutory interpretation.   It has no affinity, either in method or effect, to the proceeding at common law instituted by the sheriff when he found the title to the property levied on by him under execution was in doubt, for the verdict that he took on such occasions was altogether of his own seeking, and had no other operation than to lay ground for an option whether he should retain or surrender the chattels in dispute. All the authorities hold that such inquests were traversable, and that they did not in any degree affect the title to the property.   Therefore, this part of the ancient practice is so entirely aside of the subject to be considered that it is not necessary to further advert to it.

The statutory arrangement that was put in force in the present instance is that which proceeds from the fifty-ninth and sixtieth sections of the act constituting courts for the trial of small causes.   The provision is to the effect that where the property levied on is claimed by any person other than the defendant, by notice in writing delivered to the constable, the latter shall delay his sale for ten days, so that, within that period, such claimant may apply to a justice for a *venire* to

summon a jury of six lawful men as jurors, to try the right of such claimant to said property. The provision further declares that it shall be lawful for such justice to issue such *venire* "and direct a return thereof to be to him made, and to proceed therein as in other cases of trial by jury," and it then proceeds in these words, viz., "The verdict of such jury shall protect the said constable from any action for taking and seizing such property, on delivery thereof to the claimant; and if the said property shall be found to belong to the said claimant, the said constable shall proceed no further with the same; but if it shall be found to belong to the defendant, he shall proceed to dispose of the same, as is directed in such process; and the costs attending such trial shall be taxed by the said justice as in other cases, and shall be paid by the plaintiff at whose suit the said property was taken and seized, if the said claimant obtain a verdict in his favor, and by said claimant if the verdict is found against him." *Rev., p.* 550.

Looking into these several provisions of the act, it becomes clearly manifest that the course of proceeding here delineated constitutes, with respect to every essential, relating either to form or substance, a trial at law of the subject upon which it operates. There is here appointed an *actor* and a *reus*, the claimant being the former and the plaintiff in execution the latter, and the claimant being required to file his claim and to notify the plaintiff of the time and place of trial. The title is the issue, for the statute itself declares that the jurors are "to try the right of such claimant to said property." The proceeding is before, and is to be guided by a judicial officer, a justice of the peace, who is enjoined "to proceed therein as in other cases of trial by jury"—that is, the jury is to be chosen and sworn before him in the common law mode; he is to qualify the jurors and the witnesses; to pass upon the admissibility of the evidence offered by the one side or the other, and to charge the jury as to the law and to take and make a minute of the verdict. In the case of *Baird* v. *Johnson*, 2 *Green* 120, this court outlined the form of the entries that should be made in the docket of the justice in that class

of proceedings, and suggested that after the costs had been taxed "the justice ought to say, ' which I award to be paid by the plaintiff 'to the claimant,' or, ' by the claimant to the plaintiff,' as the case may be." If we add to this transaction the further incident that the entire affair, so far as the law is concerned, is under the supervision of this court through its prerogative writ of *certiorari*, it is difficult to see wherein it lacks any one of those legal contrivances or methods which are deemed important to the needs of justice in an ordinary action at law.

And, hence, the question arises, what is the purpose of this institution; was it the legislative intention that all this elaborate machinery should have but one effect—that is, that it should be a mere inquest of office for the protection of the officer alone? In several of the states there are statutes having this narrow and abortive operation, but such bear but a slight analogy to the act under consideration, with respect either to the procedure established or the design of the enactments as declared by the respective legislatures. In the law before us, not only its well concerted adjustments of a mode of procedure for the trial of the title to the property between the plaintiff in execution and the claimant forbid the inference that it was the purpose of the lawmaker to confine its effect to the protection of the officer, but such interpretation is not compatible with the proceedings subsequent to the verdict as directed by the act. From the citations from section 60, as already introduced, it appears that after ordaining that the verdict shall be a complete protection, in any event, to the constable, it then declares that if the verdict be in favor of the claimant, that officer shall proceed no further with the execution, but if the property "shall be found to belong to the defendant in execution, he shall proceed to dispose of the same as is directed in such process." Such a disposition as this cannot rationally be made to consist with any other theory than that it was the legislative intention to give the force of finality to the trial, as prescribed with respect to the title so in issue as to both the parties thus litigating. If the

claimant succeeds, the statutory effect is to give to him the property relieved from the lien of the execution; it is not perceived in that situation by what means the plaintiff in execution can again challenge his right to it; as between these two the verdict appears to conclude, for all time, this controversy. On the other hand, when the verdict is against such claimant, the constable is commanded " to proceed to dispose of the chattels ' as is directed in ' the execution "—that is, he is to make sale of them and pay over the proceeds to the plaintiff to the extent of the moneys due him. Here, again, the transaction, as directed, implies that the verdict has finally settled that the title to the property sold is not in the claimant, for unless this be so, what right has the plaintiff to the moneys produced by its sale? Certainly those moneys by such payment are irrevocably lost to the claimant, for in what mode could he call in question the right of the plaintiff to them? The law having expressly awarded to plaintiff such moneys, his reception of them could not be construed into a tort. On this side, likewise, the trial has all the effective force that would reside in any other judicial determination of the controversy embraced in the verdict.

These considerations have led me to the conclusion that this trial before the justice was intended to have, and therefore has, the efficacy of deciding the title to the property levied on between the plaintiff in execution and the claimant, and that consequently the right of the purchaser under the execution cannot be disputed by such claimant.

In this connection it may be well to remark that it is believed that the view above expressed harmonizes with the construction of this statutory provision that has, in practice, always prevailed in this state. The act was passed in 1818, and since that period to the present our reports show no trace of any litigation founded on the theory that these verdicts do not conclude the title between the claimant and the plaintiff in execution.

With regard to the second ground assigned in the brief of the counsel of the plaintiff, why the verdict in question should

not have the force thus given to it, we are of opinion that it cannot prevail. That reason is, that by force of the constitution of this state the title to the property now in question could not be settled by the verdict of six men. It is insisted that such a procedure, in effect, deprives this plaintiff of his trial by a constitutional jury—that is, a jury of twelve men.

This reasoning is founded on a mistake of fact. In these instances neither of the parties is deprived of a regular common law trial. What this statute does is this, it offers for their acceptance a mode of trial, at once inexpensive and facile; but neither the one nor the other is compelled to resort to it. The claimant has the option of presenting his claim or of vindicating his rights of property by an action of replevin or in trespass *de bonis asportatis;* the plaintiff in execution may give bond and compel a sale under his execution, and thus refer the question of title for trial to the ordinary tribunals. But the parties can waive such rights and, at their option, accept the easier method of litigation proffered by the legislature, and in such event the rule applies, *volenti non fit injuria.* The matter will not bear discussion.

Let the Circuit Court be advised in conformity with the above views.