**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-1354
_____

GENIVALDO PEREIRA PIMENTA;
QUEITANI DE SOUZA ALVES;
C. E.S. P.A,

Petitioners

v.

ATTORNEY GENERAL OF THE UNITED STATES OF AMERICA
_____

On Petition for Review of an Order of the Board of Immigration Appeals
(Agency Nos. A216-917-338; A216-917-339; A216-917-340)
Immigration Judge: Pallavi Shirole
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
December 6, 2024
_____

Before: SHWARTZ, MATEY, and McKEE, Circuit Judges.

(Filed: December 10, 2024)
_____

OPINION*
_____

---

* This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

SHWARTZ, <u>Circuit Judge</u>.

Petitioners Genivaldo Pereira Pimenta, his wife Queitiani De Souza Alves, and their child seek review of an order of the Board of Immigration Appeals ("BIA") denying their applications for asylum, withholding of removal under 8 U.S.C. § 1231(b)(3), and protection under the Convention Against Torture ("CAT"), 8 C.F.R. § 1208.16(c). Because they fail to demonstrate a nexus between their potential persecution and membership in a particular social group, and because they have not shown the Brazilian government would acquiesce in the mistreatment they fear upon removal, we will deny the petition.

I

A

Petitioners are natives and citizens of Brazil. In Brazil, Pimenta borrowed the equivalent of about $45,000 from a man named Joao. After the first loan payment came due, Pimenta and his wife were confronted by individuals who referenced the debt, pointed a gun at them, and threatened to kill them. That night, Petitioners fled to a relative's house, but they did not feel safe because of their belief that Joao is "a man of power" who will "surely find . . . and kill" them wherever they are in Brazil. AR 206.

Two months later, Petitioners entered the United States without authorization. Since then, they have received threats via social media, including a threat that someone would be "waiting for [Genivaldo] when [he] returned to Brazil." AR 208. Individuals also found Genivaldo's brother, who still lives in Brazil, and asked him about Petitioners'

2

whereabouts, although they did not threaten or harm him or any other of Petitioners'

relatives.

B

Petitioners received Notices to Appear before an Immigration Judge ("IJ"),

asserting their removability under 8 U.S.C. § 1182(a)(6)(A)(i), and they applied for

asylum, withholding of removal, and CAT relief. The IJ found Petitioners were

removable and denied their applications on all three bases. As to their asylum

applications, the IJ found that the death threats constituted past persecution,[1] but

Petitioners were not threatened on account of a protected ground because they were

"targeted by criminals because of their failure to pay back a loan, not on account of," AR

71, their membership in the particular social group: "family members of Genivaldo

Pereira Pimenta," AR 69. Because Petitioners did not make the showing required to

obtain asylum, the IJ concluded they necessarily could not meet the higher burden to

obtain withholding of removal. As to their application for CAT relief, the IJ found that

Petitioners failed to establish a likelihood that they would face torture upon removal

because the record does not (1) establish that "they will more likely than not encounter

Joao again," or (2) support the conclusion that Brazilian officials would acquiesce to

Joao's criminal activity. AR 76.

---

[1] The IJ also found that, although they subjectively feared future persecution, such
fear was not objectively reasonable because they provided "scant details as to Joao's
purported resources, affiliations, or influence." AR 74.

3

The BIA affirmed the IJ's decision, (1) finding no clear error in the IJ's determination that Petitioners were targeted for their failure to pay back a loan, rather than on account of any protected ground, and (2) agreeing that Petitioners failed to establish that any future harm they might face "would be with the consent or acquiescence of a public official." AR 309.

Petitioners seek review.

II[2]

A

We first address Petitioner's asylum and withholding of removal claims. To obtain asylum, Petitioners must show that (1) they are "unable or unwilling to return to, and [are] unable or unwilling to avail [themselves] of the protection of" the country to which they would be removed "because of persecution or a well-founded fear of persecution," 8 U.S.C. § 1101(a)(42)(A); and (2) their "membership in a particular social group [("PSG")] . . . was or will be at least one central reason" for the persecution, id. § 1158(b)(1)(B)(i). A PSG is "(1) composed of members who share a common

---

[2] The IJ had jurisdiction pursuant to 8 C.F.R. § 1240.1(a). The BIA had jurisdiction under 8 C.F.R. §§ 1003.1(b)(3) and 1240.15. We have jurisdiction to review final orders of removal under 8 U.S.C. § 1252. "We usually review the BIA's opinion as the agency's 'final order.' However, [w]hen, as here, the BIA affirms an IJ's decision and adds analysis of its own, we review both the IJ's and the BIA's decisions, referring to the BIA's opinion generally and to the IJ's opinion when necessary." Luziga v. Att'y Gen., 937 F.3d 244, 251 (3d Cir. 2019) (internal quotation marks, citations, and footnote omitted) (alteration in original). We review the BIA's legal determinations de novo, see Aguilar v. Att'y Gen., 107 F.4th 164, 170 n.3 (3d Cir. 2024), but "administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary," 8 U.S.C. § 1252(b)(4)(B).

4

immutable characteristic, (2) defined with particularity, and (3) socially distinct within the society in question."[3] Avila v. Att'y Gen., 82 F.4th 250, 262 (3d Cir. 2023) (quoting Matter of M-E-V-G-, 26 I. & N. Dec. 227, 237 (BIA 2014)). "For a protected characteristic to qualify as 'one central reason', it must be an essential or principal reason for the persecution," Gonzalez-Posadas v. Att'y Gen., 781 F.3d 677, 685 (3d Cir. 2015), and cannot merely play an "incidental, tangential, or superficial role in [the] persecution," id. (quoting Ndayshimiye v. Att'y Gen., 557 F.3d 124, 130 (3d Cir. 2009)). To obtain withholding of removal relief, Petitioners must also show they fear persecution because of a protected characteristic, such as membership in a PSG.[4] See 8 U.S.C. § 1231(b)(3)(A); 8 C.F.R. § 208.16(b).

Petitioners assert that they were and will be persecuted by Joao or his associates based on their membership in eight PSGs.[5] Of these proposed PSGs, the BIA correctly

---

[3] "'Particularity' addresses 'the "outer limits" of a group's boundaries and is definitional in nature,' whereas 'social distinction' focuses on 'whether the people of a given society would perceive a proposed group as sufficiently separate or distinct.'" S.E.R.L. v. Att'y Gen., 894 F.3d 535, 548 (3d Cir. 2018) (quoting Matter of M-E-V-G-, 26 I. & N. Dec. 227, 241 (BIA 2014)). "[T]he existence of a cognizable particular social group presents a mixed question of law and fact." Id. at 543. We review "the ultimate legal conclusion as to the existence of a particular social group" de novo, and the factual findings underlying that conclusion for substantial evidence. Id.

[4] The nature of the proof for each type of relief is different. Asylum requires a showing of a "well-founded fear of persecution," 8 U.S.C. § 1101(a)(42)(A), whereas withholding requires that a petitioner show a "clear probability" of persecution if removed, Carlos Alberto Inestroza-Tosta v. Att'y Gen., 105 F.4th 499, 517 (3d Cir. 2024) (citation omitted).

[5] The proposed PSGs are:
(1) Brazilian citizens who are targeted by a criminal organization in Brazil[;]
(2) Brazilian citizens who are targeted by a criminal organization in Brazil and cannot get protection from the Brazilian government[;] (3) Brazilian citizens who are victims of a criminal organization in Brazil[;] (4) Brazilian

found only one—"family members of Genivaldo Pereira Pimenta"—to be legally cognizable. AR 70. However, even assuming that Petitioners' family is a cognizable PSG, substantial evidence supports the BIA's conclusion that the purported persecution was not "on account of" family affiliation because Joao threatened Petitioners' family as an incidental means to a non-protected end: collecting a debt.[6] See, e.g., Gonzalez-Posadas, 781 F.3d at 685 ("Conflicts of a personal nature and isolated criminal acts do not constitute persecution on account of a protected characteristic."); Shehu v. Att'y Gen., 482 F.3d 652, 657 (3d Cir. 2007) (holding that petitioner did not face persecution where he was targeted by a gang for economic reasons, rather than on account of any protected ground); see also Garcia-Aranda v. Garland, 53 F.4th 752, 758 (2d Cir. 2022)

---

citizens who are victims of a criminal organization in Brazil and cannot get protection from the Brazilian government[;] (5) Brazilian citizens who were threatened at gunpoint by a criminal organization in Brazil[;] (6) Brazilian citizens who are threatened at gunpoint by a criminal organization in Brazil and are unable to get protection from the Brazilian government[;] (7) Brazilian citizens who are threatened to death with a gun while in the United States by a criminal organization from Brazil[;] and (8) family members of Genivaldo Pereira Pimenta.

Pet'rs' Br. at 12. We agree with the BIA that these proposed PSGs are not legally cognizable because "a social group cannot be created by the alleged underlying persecution" and "must exist independently of the persecution suffered by the applicant for asylum." See Lukwago v. Ashcroft, 329 F.3d 157, 172 (3d Cir. 2003).

Before the IJ and BIA, Petitioners also argued that their persecution was on account of a political opinion they ostensibly held, but they waived this argument by failing to advance it in their brief before this Court. See Travitz v. Ne. Dep't ILGWU Health & Welfare Fund, 13 F.3d 704, 711 (3d Cir. 1994) ("When an issue is not pursued in the argument section of the brief, the appellant has abandoned and waived that issue on appeal.").

[6] The fact that Petitioners' family members continue to live in Brazil without apparent incident provides further support for the conclusion that Joao and his affiliates have no particular animus towards the family.

6

(upholding agency's finding of no nexus between persecution and protected status where petitioner was targeted for extortion based on "her perceived ability to pay" and where "animus towards [her family] was at most an incidental reason for her targeting"). Accordingly, their asylum and withholding claims fail.[7]

B

Petitioners' request for CAT relief also fails. To obtain CAT relief, Petitioners must show "that it is more likely than not that [they] would be tortured if removed" to Brazil. Myrie v. Att'y Gen., 855 F.3d 509, 515 (3d Cir. 2017) (quoting 8 C.F.R. § 1208.16(c)(2)). Under the CAT, torture is defined as:

> (1) an act causing severe physical or mental pain or suffering; (2) intentionally inflicted; (3) for an illicit or proscribed purpose; (4) by or at the instigation of or with the consent or acquiescence of a public official who has custody or physical control of the victim; and (5) not arising from lawful sanctions.

Id. (quoting Auguste v. Ridge, 395 F.3d 123, 151 (3d Cir. 2005)). "[A]ssessing whether an applicant has established that public officials will acquiesce to the feared tortuous acts of a non-state actor" requires "a factual finding . . . as to how public officials will likely act in response to the harm the petitioner fears" and a legal determination as to "whether the likely response from public officials qualifies as acquiescence," id. at 516, or "willful[] blind[ness]," id. (quoting Silva-Rengifo v. Att'y Gen., 473 F.3d 58, 65 (3d Cir. 2007), as amended (Mar. 6, 2007)).

---

[7] See Ying Chen v. Att'y Gen., 676 F.3d 112, 117 (3d Cir. 2011) (noting that a petitioner's failure to establish an asylum claim necessarily implies a failure to establish a withholding claim).

Substantial evidence supports the IJ's finding that, although the "country conditions evidence suggests corruption within the Brazilian government and law enforcement exists,"[8] Petitioners failed to make any particularized showing that the "Brazilian government would acquiesce or be willfully blind to Joao['s conduct]."  AR 76.  A general showing that Brazil struggles with corruption does not provide a basis for CAT relief where there is no evidence Brazilian authorities would acquiesce to Joao's specific conduct toward Petitioners.  See, e.g., Valdiviezo-Galdamez v. Att'y Gen., 663 F.3d 582, 592 (3d Cir. 2011) (explaining that even widespread human rights violations are insufficient to establish a particular person will be in danger of torture absent specific evidence that the petitioner would personally be at risk); Amanfi v. Ashcroft, 328 F.3d 719, 726 (3d Cir. 2003) (upholding the agency's denial of CAT protection where petitioner failed to prove that officials would be aware of feared private conduct and "breach [their] legal responsibility to intervene" (quoting 8 C.F.R. § 208.18(a)(7))).  Accordingly, Petitioners' requests for CAT relief fail.

III

For the foregoing reasons, we will deny the petition.

---

[8] See, e.g., AR 103 (noting that "[t]he government prosecute[s] officials who commit[] abuses or engage[] in corruption"); 118 ("The law provides criminal penalties for convictions of corruption by officials . . . .").

8